Citation Nr: 1736713 
Decision Date: 08/31/17 Archive Date: 09/06/17

DOCKET NO. 10-15 151 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in San Diego, California


THE ISSUE

Entitlement to an increased rating for ocular hypertension, hypertensive retinopathy with right eye glaucomatous optic neuropathy (hereinafter "ocular hypertension") in excess of 10 percent from July 20, 2011.


ATTORNEY FOR THE BOARD

J. Rohde, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant, had active duty from January 1972 to March 1993.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2012 rating decision by the RO, which granted an increased rating of 
10 percent for right eye glaucomatous optic neuropathy, and rated it together with the service-connected ocular hypertension, from July 20, 2011 (date of the diagnosis of right eye glaucomatous optic neuropathy).

This case was previously before the Board in March 2017, where the issue of an increased rating in excess of 10 percent for ocular hypertension was remanded to the RO to obtain all relevant treatment records. The treatment records were obtained, or were reasonably attempted to be obtained. The RO readjudicated the claim in a June 2017 supplemental statement of the case (SSOC), and denied an increased rating in excess of 10 percent rating from July 20, 2011. As such, the directives of the March 2017 Remand have been substantially complied with. See Stegall v. West, 11 Vet. App. 268 (1998).

The Veteran attended a Board hearing in October 2014 before a Veterans Law Judge who is no longer employed by the Board. In January 2017, the Veteran was informed of the departure of the Veterans Law Judge, and offered the opportunity to attend another Board hearing. The Veteran was advised that if he did not respond within 30 days, the Board would assume he did not want another Board hearing. The Veteran responded in a March 2017 written statement that he did not want another Board hearing. Consequently the Board will proceed with the appeal.

The instant matter is a Veterans Benefits Management System (VBMS) appeal. The Board has reviewed both the VBMS and the "Virtual VA" files so as to insure a total review of the evidence. Additional evidence has been received by the Board for which a waiver of initial RO consideration was provided. 38 C.F.R. § 20.1304 (2016).


FINDING OF FACT

For the period from July 20, 2011, the Veteran's ocular hypertension has, at worse, been manifested by corrected distance vision in the right eye of at least 20/40 and in the left eye of at least 20/40, the average remaining field of vision in the right eye of 58.120 degrees and in the left eye of 56.875 degrees, required continuous medication, and did not manifest with incapacitating episodes or abnormalities in muscle function.


CONCLUSION OF LAW

The criteria for an increased rating in excess of 10 percent for ocular hypertension have not been met or more nearly approximated for the period from July 20, 2011. 
38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.5, 4.7, 4.25, 4.76, 4.77, 4.78, 4.79, DCs 6013, 6061-6066, 6080, 6090 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duties to notify and assist claimants in substantiating their claims for VA benefits. 
38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). This notice should be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In a claim for increase, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

In this case, the Veteran was not issued VCAA notice prior to the February 2012 rating decision; however, any VCAA notice deficiency was cured by the information contained in the March 2015 Statement of the Case and subsequent June 2015, January 2016, September 2016, and June 2017 Statements of the Case. See Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (Mayfield IV); Prickett v. Nicholson, 20 Vet. App. 370 (2006) (the issuance of a fully compliant VCAA notification followed by readjudication of the claim, such as a SOC or SSOC, is sufficient to cure a timing defect). As a matter of law, the provision of adequate VCAA notice prior to a readjudication "cures" any timing problem associated with inadequate notice or the lack of notice prior to an initial adjudication. See Mayfield, 499 F.3d at 1321. Thus, the Board concludes that VA satisfied its duty to notify the Veteran.

VA provided the Veteran with VA examinations in December 2011 and February 2015. The collective VA examination reports include all relevant findings and medical opinions needed to evaluate the appeal. The VA examiners considered an accurate history of the claimed disability as provided through interview of the Veteran and review of the record, as well as the Veteran's subjective complaints as it related to the current symptomatology and its effects on daily life and performed thorough examinations; therefore, the VA examiners had adequate facts and data regarding the history and condition of the disability. 

The Veteran has not made the RO or the Board aware of any other evidence relevant to the appeal that needs to be obtained. Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed, and no further development is required.

Disability Rating Law and Regulation

Disability ratings are determined by the application of the VA Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

In determining the disability rating, VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Governing regulations include 38 C.F.R. 
§§ 4.1 and 4.2, which require the evaluation of the complete medical history of a veteran's condition. 

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. 

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 
38 C.F.R. § 4.25 (2016). Pyramiding, the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14 (2016). It is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

When determining the combined rating level for more than one disability, 38 C.F.R. § 4.25 directs the usage of the Combined Ratings Table, which reflects the efficiency of an individual as affected first by the most disabling condition, then by the less disabling condition, then by other less disabling conditions, if any, in the order of severity. See 38 C.F.R. § 4.25.

When an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. Conjectural analogies will be avoided, as will the use of analogous ratings for conditions of doubtful diagnosis, or for those not fully supported by clinical and laboratory findings. Nor will ratings assigned to organic diseases and injuries be assigned by analogy to conditions of functional origin. 38 C.F.R. § 4.20 .

Where an increase in an existing disability rating based on established entitlement to compensation is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. Hart v. Mansfield, 21 Vet. App. 505 (2007).

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno v. Brown, 6 Vet. App. 465 (1994). Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. 303.

Rating Criteria of Eye Disorders

Diseases of the eye are to be rated on the basis of either visual impairment or on incapacitating episodes according to a General Rating Formula, whichever results in a higher rating. The Veteran's ocular hypertension, hypertensive retinopathy with right eye glaucomatous optic neuropathy, has been rated under Diagnostic Code 6099-6079. In the February 2012 rating decision the RO supported the 10 percent rating by explaining it was due to "continuous medication." The relevant (and only) Diagnostic Code that considers continuous medication as criteria for rating is 
DC 6013 (open angle glaucoma). Further, the Veteran's right eye glaucomatous optic neuropathy and ocular hypertension are being treated by the same medications that would relieve high intraocular pressure in a patient with a diagnosis of glaucoma; therefore, the Board will change the Diagnostic Code to 6099-6013 for the rating period from July 20, 2011. See Douglas J. Rhee, Drugs Used to Treat Glaucoma, Merck Manual Online (January 2016), http://www.merckmanuals.com/professional/eye-disorders/glaucoma/primary-open-angle-glaucoma#v956228. The assignment of a particular diagnostic code is "completely dependent on the facts of a particular case" and the Board can choose the diagnostic code to apply so long as it is supported by reasons and bases as well as the evidence. Butts v. Brown, 5 Vet. App. 532, 538 (1993). Additionally, the use of DC 6099-6013 is not less favorable to the Veteran than DC 6099-6097, as 
DC 6013 includes the rating of visual impairment and use of continuous medication. 

Open angle glaucoma is governed by DC 6013, which states glaucoma should be rated based on 1) the General Rating Formula based on incapacitating episodes or 2) under the visual impairment. A minimum 10 percent rating is warranted if continuous medication is required. 38 C.F.R. § 4.79. 

Regarding the first method of rating, under the General Rating Formula based on incapacitating episodes, the following ratings apply: a 10 percent rating is warranted for an eye disability with incapacitating episodes having a total duration of at least 
1 week, but less than 2 weeks, during the previous 12 months; a 20 percent rating is warranted with incapacitating episodes having a total duration of at least 2 weeks, but less than 4 weeks, during the previous 12 months; a 40 percent rating is warranted with incapacitating episodes having a total duration of at least 4 weeks, but less than 6 weeks, during the previous 12 months. A 60 percent rating is warranted for an eye disability with incapacitating episodes having a total duration of at least 6 weeks during the previous 12 months. A note to DC 6006 defines an incapacitating episode as a period of acute symptoms severe enough to require prescribed bed rest and treatment by a physician or other healthcare provider. 
38 C.F.R. § 4.79.

When rating diseases of the eye on the basis of visual impairment, the regulations direct that visual impairment is to be rated based on the consideration of three factors: 1) impairment of visual acuity (excluding developmental errors of refraction), 2) visual field, and 3) muscle function. 38 C.F.R. § 4.75 (2016).

In regard to the method of rating impairment of visual acuity, 38 C.F.R. § 4.76 directs that an examination of visual acuity must include the central uncorrected and corrected visual acuity for distance and near vision using Snellen's test type or its equivalent. 38 C.F.R. § 4.76. To warrant a 10 percent rating based on impairment of central visual acuity, the vision in one eye must be at least 20/50. 38 C.F.R. 
§ 4.79, DCs 6061-6066.

Central visual acuity is to be evaluated on the basis of corrected distance vision with central fixation, even if a central scotoma is present. However, when the lens required to correct distance vision in the poorer eye differs by more than three diopters from the lens required to correct distance vision in the better eye (and the difference is not due to congenital or developmental refractive error), and either the poorer eye or both eyes are service connected, the visual acuity of the poorer eye is to be evaluated using either its uncorrected or corrected visual acuity, whichever results in better combined visual acuity. 38 C.F.R. § 4.76.

In regard to the method of rating impairment of visual field, 38 C.F.R. § 4.77 explains that the normal visual field extent at eight principal meridians is (expressed in degrees): Temporally: 85, Down temporally: 85, Down: 65, Down nasally: 
50, Nasally: 60, Up nasally: 55, Up: 45, Up temporally: 55. The combined sum is 500. To calculate the visual field, determine the average concentric contraction of the visual field of each eye by measuring the remaining visual field (in degrees) at each of eight principal meridians 45 degrees apart, adding them, and dividing the sum by eight. 38 C.F.R. § 4.77. 

The rating criteria dictate that, when the remaining visual field is 46-60 degrees, a 10 percent rating is applied for unilateral or bilateral impairment; alternatively, each affected eye may be rated as 20/50. When the remaining visual field is 31-45 degrees, a 10 percent rating is applied for unilateral and a 30 percent rating is applied for bilateral; or alternatively each affected eye may be rated as 20/70. When the remaining visual field is 16-30 degrees, a 10 percent rating is applied for unilateral and a 50 percent rating is applied for bilateral; or alternatively each affected eye may be rated as 20/100. Id. 

When a combination of visual field defect and decreased visual acuity are present in one or both eyes and are service connected, visual field defect (expressed as visual acuity) and visual acuity are to be separately rated, and then combined in accordance with 38 C.F.R. § 4.25. See 38 C.F.R. § 4.77(c). 

In regard to the method of rating impairment based on muscle function, 38 C.F.R. 
§ 4.78 explains that muscle function is rated on the degree of diplopia. A rating for diplopia will be assigned for only one eye. A veteran that has both diplopia and decreased visual acuity or visual field defect will be assigned a level of corrected visual acuity for the poorer eye (or the affected eye, if disability of only one eye is service connected) that is: one step poorer than it would otherwise warrant if the rating for diplopia under diagnostic Code 6090 is 20/70 or 20/100; two steps poorer if the rating under diagnostic code 6090 is 20/200 or 15/200; or three steps poorer if the rating under diagnostic code 6090 is 5/200. 38 C.F.R. § 4.79.

Rating Analysis for Ocular Hypertension

As discussed above, the Veteran's ocular hypertension is now rated under 38 C.F.R. § 4.79, Diagnostic Code 6099-6013 (2016). The Veteran generally contends that the symptoms and impairment of the service-connected ocular hypertension more closely resemble the criteria for a rating in excess of 10 percent from July 20, 2011.

For the rating period from July 20, 2011, the Board finds that the criteria for a disability rating in excess of 10 percent have not been met or more nearly approximated. During the period from July 20, 2011, the ocular hypertension was, at worse, manifested by corrected distance vision in the right eye of at least 20/40 and in the left eye of at least 20/40, reaming visual field on average of 58.120 degrees in the right eye, and 56.875 degrees in the left eye, no periods of physician prescribed bed rest, abnormalities in muscle function, scarring or disfigurement, and continuous medication.

Examination of the eyes in December 2011 demonstrated corrected distance vision of 20/40 or better in the right eye and 20/40 or better in the left eye. The VA examination report reflects that the Veteran did not have a difference equal to two or more lines on the Snellen test type chart or its equivalent between distance and near corrected vision, with the near vision being worse. 

Upon examination, the December 2011 VA eye examiner determined that the Veteran had a condition that may result in a visual field defect, and performed a Goldmann perimetry test, which was provided in graph form. The Board can interpret and rate scores provided in graph form. See Kelly v. Brown, 7 Vet. App. 471, 474 (1995) (noting that, because interpreting results from an audiometric graph involves fact finding, the Court is precluded from engaging in such fact finding in the first instance, and remanding in part because the Board did not discuss the results of the testing); see also Savage v. Shinseki, 24 Vet. App. 249 (2011) (noting the Board may interpret results from an audiometric graph, if it felt it had the expertise, and holding that the Board may not ignore such test results that are of record). 

The December 2011 VA examiner reported the visual field was normal and full on both sides. In the right eye, the meridians were approximately: Temporally: 75 (loss of 10), Down temporally: 70 (loss of 15), Down: 60 (loss of 5), Down nasally: 50 (no loss), Nasally: 60 (no loss), Up nasally: 55 (no loss), Up: 40 (loss of 5), Up temporally: 60 (no loss). The combined sum of the right eye meridians is 470, resulting in an average remaining field of vision in the right eye of 58.750 degrees. In the left eye, the meridians were approximately: Temporally: 60 (loss of 25), Down temporally: 55 (loss of 30), Down: 60 (loss of 5), Down nasally: 70 (no loss), Nasally: 75 (no loss), Up nasally: 60 (no loss), Up: 40 (loss of 5), Up temporally: 50 (loss of 5). The combined sum of the left eye meridians is 470, resulting in an average remaining field of vision in the left eye of 58.750 degrees. 

The December 2011 VA examination report also reflects conjunctiva in both eyes. The VA examiner reported right and left eye nasal and temporal pinguecula, and that it did not result in a decrease in visual field acuity or other visual impairment. The VA examination report reflects the Veteran had no scarring or disfigurement attributable to any eye condition, had no diplopia, and had no incapacitating episodes. The Veteran reported that the eye condition impacted the ability to work due to eye fatigue and losing focus when cutting hair.

Examination of the eyes in February 2015 demonstrated corrected distance vision of 20/40 or better in the right eye and 20/40 or better in the left eye. The VA examination report reflects that the Veteran did not have a difference equal to two or more lines on the Snellen test type chart or its equivalent between distance and near corrected vision, with the near vision being worse. 

Upon examination, the February 2015 VA eye examiner determined that the Veteran had a condition that may result in a visual field defect, and performed a Goldmann perimetry test, which was provided in graph form. The February 2015 VA examiner reported the visual field was normal and full on both sides. In the right eye, the meridians were approximately: Temporally: 75 (loss of 10), Down temporally: 70 (loss of 15), Down: 60 (loss of 5), Down nasally: 55 (no loss), Nasally: 60 (no loss), Up nasally: 50 (loss of 5), Up: 35 (loss of 10), Up temporally: 60 (no loss). The combined sum of the right eye meridians is 465, resulting in an average remaining field of vision in the right eye of 58.12 degrees. In the left eye, the meridians were approximately: Temporally: 65 (loss of 20), Down temporally: 50 (loss of 35), Down: 60 (loss of 5), Down nasally: 70 (no loss), Nasally: 75 (no loss), Up nasally: 50 (loss of 5), Up: 40 (loss of 5), Up temporally: 45 (loss of 10). The combined sum of the left eye meridians is 455, resulting in an average remaining field of vision in the left eye of 56.875 degrees. 

The VA examination report also reflects diagnoses of ocular hypertension in both eyes in 1993, and pinguecula of both eyes. The VA examiner reported right and left eye nasal and temporal pinguecula, and that it did not result in a decrease in visual field acuity or other visual impairment. The VA examination report reflects the Veteran had no scarring or disfigurement attributable to any eye condition, had no diplopia, and had no incapacitating episodes. The VA examiner concluded the Veteran's eye condition did not impact the ability to work.

The Veteran received private (medical) and VA treatment for eye problems during this period. January 2016 private treatment records reflect corrected distance vision visual acuity readings of 20/20 in the right eye and 20/20 in the left eye. The January 2016 records also reflect no ocular retinopathy. April 2015 VA treatment records reflect complaints of blurriness, corrected distance vision visual acuity readings of 20/40 in the right eye and 20/20 in the left eye. March 2015 VA treatment records reflect corrected distance vision visual acuity readings of 20/30 in the right eye and 20/30 in the left eye. July 20, 2011 VA treatment records reflect a diagnosis of glaucomatous optical neuropathy, and corrected distance vision visual acuity reading of 20/40 in the right eye and 20/20 in the right eye.

At a October 2014 Board hearing, the Veteran testified to having a physical examination by an eye doctor in about 2006 for eye pressure, when the doctor placed him on eye drops. The Veteran testified that the new medication causes his eyes to be sensitive to light and redness. The Veteran has to wear sunglasses to work.

After a review of the evidence, both lay and medical, the Board finds that, for the rating period from July 20, 2011, the criteria for a disability rating in excess of 
10 percent for ocular hypertension have not been met or more nearly approximated. 38 C.F.R. §§ 4.25, 4.75-7.79 (2016). When the corrected distance vision visual acuity readings of, at worse, 20/40 in the right eye and 20/40 in the left eye are applied to the regulations, they result in a noncompensable (0 percent) disability rating for the period from July 20, 2011. See 38 C.F.R. § 4.79, DCs 6061-6066 (2016). 

Regarding the rating method for visual field impairment, as discussed above, the February 2015 and December 2011 VA examinations reflected the average remaining field of vision in the right eye and left eye having a remaining fields of vision between 46-60 degrees for the period from July 20, 2011. When these findings are applied to Diagnostic Code 6080, they result in a 10 percent disability rating. See 38 C.F.R. § 3.77, DC 6080 (2016). 

The manifestations of ocular hypertension are consistent with a noncompensable 
(0 percent) rating for visual acuity impairment, and a 10 percent rating for visual field impairment for this rating period. As there is only one compensable disability rating, the Combined Ratings Table of 38 C.F.R. § 4.25 is not for application. See 38 C.F.R. § 4.77(c). 

The Board considered a separate rating for muscle function; however, there is no evidence of any ocular muscle issues or diplopia, and muscle functioning of the eyes is evaluated based on the degree of diplopia. VA treatment records do not indicate diplopia in either eye, and the Veteran has neither testified nor submitted statements to support such a finding. Accordingly, the Board finds that a disability rating for ocular hypertension is not warranted based on impairment of muscle function.

As discussed above, under the regulations, the Veteran can also be rated under the General Rating Formula for incapacitating episodes for ocular hypertension. After a review of all the evidence, the Board finds that the weight of the lay and medical evidence is against finding that ocular hypertension was manifested by incapacitating episodes having a total duration of at least 2 weeks, but less than 
4 weeks, during any 12-month period of the entire rating period, as required for a higher (20 percent) disability rating. Neither the VA treatment records nor the VA examination reports suggest a history of incapacitating episodes due to the ocular hypertension. Similarly, the Veteran has not made any assertions of incapacitating episodes due to ocular hypertension at any point during the period from July 20, 2011. For these reasons, the Board finds that a higher (20 percent) rating based on incapacitating episodes is not warranted. 38 C.F.R. §§ 4.3, 4.79. 

For these reasons, the weight of the evidence is against a finding that an increased disability rating in excess of 10 percent under Diagnostic Code 6013 is warranted from July 20, 2011. See 38 C.F.R. §§ 4.3, 4.7.

The Board has considered whether the manifestations of ocular hypertension would receive a higher rating based on the criteria found under DC 6018 (chronic conjunctivitis), under DC 6026 (optic neuropathy), DC 6037 (pinguecula), or DC 6514 (sinusitis). See 38 C.F.R. § 4.20 (providing that, when an unlisted condition is encountered, it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous). The Veteran's symptoms that are reported to be high ocular blood pressure with no visual acuity impairment (for VA purposes), drainage due to eye medication drops, red and sensitive eyes, bilateral pinguecula and conjunctivitis, could be considered as closely analogous to chronic conjunctivitis, optic neuropathy, or pinguecula rating criteria. 

Under DC 6026 for optic neuropathy, the Veteran would be rated solely under impairment of central visual acuity. As discussed above, the Veteran's impairment of central visual acuity has already been rated as noncompensable (0 percent); therefore, the criteria for a rating in excess of 10 percent under DC and 6026 would not be met or more nearly approximated for the period from July 20, 2011.

Under DC 6037 for pinguecula, the Veteran would be rated based on disfigurement rating criteria under DC 7800. Under Diagnostic Code 7800, disfigurement of the head, face, or neck, a 10 percent rating is warranted when a veteran experiences one characteristic of disfigurement. See 38 C.F.R. 4.118 (2016). The 8 characteristics of disfigurement for the purposes of evaluation under § 4.118 are: scar of 5 in. or more (13 or more cm) in length; scar at least 1/4 in. (0.6 cm) wide at its widest part; surface contour of scar elevated or depressed on palpation; scar adherent to underlying tissue; skin hypo- or hyper-pigmented in an area exceeding 6 sq. in. (39 sq. cm.); skin texture abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding 6 sq. in. (39 sq. cm.); underlying soft tissue missing in an area exceeding 6 sq. in. (39 sq. cm.); and skin indurated and inflexible in an area exceeding 6 sq. in. (39 sq. cm.). DC 7800. In this case the Veteran has not asserted, and the evidence has not shown, any disfigurement that would warrant a compensable rating. Specifically, the February 2015 and December 2011 VA examinations reflect no disfigurement or scarring due to ocular hypertension. Under DC 7800, the Veteran would receive a noncompensable (0 percent) rating; therefore, the criteria for a rating in excess of 10 percent under DC 6037 would not be met or more closely approximated for the period from July 20, 2011.

For these reasons, the weight of the evidence is against a finding that an increased disability rating in excess of 10 percent under Diagnostic Codes 6018, 6026, and 6037 is warranted from July 20, 2011. See 38 C.F.R. §§ 4.3, 4.7.

The Veteran's service-connected ocular hypertension was noncompensable 
(0 percent) rated prior to July 20, 2011, the date evidence showed criteria for an increased rating (diagnosis of right eye glaucomatous optic neuropathy). The Board has considered whether an increased (compensable) disability rating was warranted at any point during the one year period prior to July 20, 2011, the date of evidence of a compensable (10 percent) rating. See Hart, 21 Vet. App. 505. No evidence was received by VA indicating that the Veteran first became entitled to an increased disability rating of 10 percent or higher for ocular hypertension between July 2010 and July 2011, the one year period prior to evidence of disability increase. As such, the appropriate effective date for the disability rating of 10 percent for bilateral hearing loss is July 20, 2011, the date of receipt of evidence of disability increase. See 38 U.S.C.A. § 5110(b)(2) (West 2014); 38 C.F.R. § 3.400(o) (2016); Gaston v. Shinseki, 605 F.3d 979, 984 (Fed. Cir. 2010).

Extraschedular Referral Analysis

The Board has considered whether referral for extraschedular consideration is warranted for ocular hypertension for any part of the appeal period. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 
38 C.F.R. § 3.321 (b)(1) (2013); see Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether the veteran's disability picture requires the assignment of an extraschedular rating. 

In this case, comparing the Veteran's disability level and symptomatology to the rating schedule, the degree of disability throughout the appeal periods under consideration is contemplated by the rating schedule. The impairment from the Veteran's ocular hypertension directly corresponds to the schedular criteria for the 10 percent rating under DC 6013. Visual field impairment and the continuous use of medication to treat an eye disability are specifically contemplated in the schedular rating criteria in this decision. Based on the reported symptoms including sensitive and red eyes, conjunctivitis, and neuropathy, the Board considered all the potentially applicable schedular rating criteria specific to the eyes, including criteria specific to disfigurement at Diagnostic Code 7800. See 38 §§ C.F.R. 4.20 (analogous ratings), 4.97, 4.118, DCs 6018, 6026, 6037, 7800. There is no symptomatology and/or functional impairment that are not considered by the rating criteria. The 10 percent schedular rating fully contemplates all the symptoms and functional impairment related to the ocular hypertension.

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 
38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1. In this case, the symptoms reported by the Veteran regarding the service-connected ocular hypertension are specifically contemplated by the criteria discussed above, including the effect of the Veteran's symptoms on occupation and daily life. In the absence of exceptional factors associated with ocular hypertension, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321 (b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate.

Finally, in adjudicating the current appeal for a higher rating, the Board has not overlooked the Court's holding in Rice v. Shinseki, 22 Vet. App. 447 (2009), which held that a claim for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) may be part of an a rating issue when the TDIU claim is either expressly raised by a veteran or reasonably suggested by the record. In this case, as distinguished from the facts in Rice, at the October 2014 Board hearing, the Veteran testified to being employed. While the Veteran has 

made statements that the service-connected ocular hypertension has affected his work, the Veteran has not contended that he is unemployable because of service-connected disabilities, and the other evidence of record does not suggest so; thus, the Board find that Rice is inapplicable in this cause because neither the Veteran nor the evidence suggests unemployability due to the service-connected disabilities.


ORDER

An increased rating for ocular hypertension in excess of 10 percent from July 20, 2011 is denied.





____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs